REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice* pending)
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:  jmccarroll@reedsmith.com
           jsiev@reedsmith.com
           kgwynne@reedsmith.com

*Proposed Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>National Bank of Anguilla (Private Banking & Trust) Ltd.,<br><br>                              Debtor. | Chapter 11<br><br>Case No.:  16-11806 (MG) |

**DECLARATION OF WILLIAM TACON**
**PURSUANT TO LOCAL RULE 1007-2**

I, William Tacon, declare as follows:

1. By an Order dated February 22, 2016 (the "First Administration Order"), the Eastern Caribbean Supreme Court in the High Court of Justice Anguilla Circuit (the "High Court") appointed me as the administrator (the "Administrator") of National Bank of Anguilla (Private Banking & Trust) Ltd. (the "Debtor").

2. I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of the books and records of the Debtor, which books and records were kept in the regular course of the Debtor's business and relied upon by the Debtor's employees in conducting the Debtor's banking business. Those books and records also included data compiled in the ordinary course of the Debtor's banking business.

- 1 -

3. I make this declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York.

## I. NATURE OF THE DEBTOR'S BUSINESS AND ITS CAPITAL STRUCTURE

4. The Debtor is a commercial bank incorporated and licensed in Anguilla.

5. The Debtor's headquarters are located at the Conrad W Fleming Corporate Building on St. Mary's Road in The Valley, Anguilla.

6. The National Bank of Anguilla Ltd. ("NBA") is the sole shareholder of the Debtor. NBA was incorporated pursuant to the laws of Anguilla as a privately-owned company.

7. The Debtor no longer has any employees. When input is required, it is provided by employees of either NBA or National Commercial Bank of Anguilla Ltd. ("NCBA"), the successor in interest to NBA, the parent of the Debtor.

8. Upon information and belief, (a) the Debtor has no secured creditors, and (b) the Debtor's only material creditors are its depositors. The Debtor has eight hundred nineteen (819) known depositors.

## II. CIRCUMSTANCES LEADING TO THE DEBTOR'S FILING FOR RELIEF UNDER CHAPTER 11

### A. Upstreaming of the Debtor's Deposits

9. On August 12, 2013, the Eastern Caribbean Central Bank (the "ECCB"), which was the regulator of NBA, placed the affairs of NBA into conservatorship pursuant to the Eastern Caribbean Central Bank Agreement Act.

10. As of August 12, 2013, the Debtor's affairs were conducted in accordance with instructions given by, and under the management control of, individuals appointed from time to time by the ECCB as conservators of NBA (collectively, the "Conservator Directors"). The Conservator Directors included Messrs. Martin Dinning, Hudson Carr, and Shawn Williams.

11. On or about August 15, 2013, the ECCB or Mr. Dinning, as Conservator Director acting on behalf of NBA, dismissed the appointed directors of the Debtor. Thereafter, the Debtor had no *de jure* directors and acted solely in accordance with the instructions of, and under the management control of, the Conservator Directors acting from time to time.

12. From and after August 12, 2013, based upon my experience as a Chartered Accountant and my review of the Debtor's financial statements provided to me by the FSC and those responsible for managing the business of the Debtor, I believe that the Debtor was insolvent on a balance sheet test. Based upon my review of financial statements for NBA and my understanding of its financial position, I also believe that NBA was balance sheet and cash flow insolvent, dependent upon the Debtor for its liquidity (at least in part), and unable to settle the large amount NBA owed to the Debtor.

13. The Conservator Directors (acting on behalf of the Debtor) procured or permitted the transfer or payment to NBA of (i) all monies denominated in U.S. Dollars received by the Debtor from depositors and (ii) the proceeds of all assets of the Debtor realized or collected, also denominated in U.S. Dollars (together, the "Funds").

14. The Conservator Directors paid or otherwise transferred to NBA funds equivalent to approximately $175 million in U.S. dollars. Upon information and belief, the Funds were deposited into an account in the United States at Bank of America and a portion of such funds may still remain in such account.

15. On April 22, 2016, the ECCB appointed a receiver to NBA and, on that date (at 4:00 p.m. local time), NBA ceased banking operations in Anguilla. According to a press release issued by the ECCB, NBA's banking operations were transferred on April 22, 2016, to a newly

established bank, NCBA, which is understood to be wholly-owned by the Government of Anguilla.

16. None of NBA, NCBA, the ECCB, and the Conservator Directors to whom I have reached out for information and an explanation relating to the transfer of the Funds to NBA (while it was insolvent) has been forthcoming with answers. In addition, despite repeated requests, I have received no indication that NBA or NCBA will repay any of the Funds. My enquiries indicate that no provision has been made for NCBA to make repayment and NBA is in receivership and clearly recognized as being insolvent.

17. Based on my investigations, including discussions with representatives of NBA and NCBA, I believe that the Debtor did not receive reasonably equivalent value in exchange for the transfer of the Funds and the Debtor was insolvent (or was rendered insolvent) by the transfer of the Funds to NBA. I have commenced legal proceedings in Anguilla against NCBA for the return of this money and sought leave of the court in Anguilla to commence an identical proceeding against NBA.[1]

    **B.**    **The Anguillian Proceeding**

18. The Debtor was regulated by the Financial Services Commission in Anguilla ("FSC"). The Debtor failed to provide the FSC on or before April 30, 2015 with audited accounts of its banking business for the financial year ended October 31, 2014, thereby violating section 30(2) of Trust Companies and Offshore Banking Act, R.S.A. c. T60.

19. Therefore, upon the application of the FSC, the High Court entered the First Administration Order, thereby placing the operations of the Debtor (and another offshore bank, the Caribbean Commercial Investment Bank Ltd.) under administration pursuant to section

---

[1] Under the terms of the Banking Act 2015, such consent is required before proceedings can commence against NBA.

31(2)(b) of the Financial Services Commission Act, R.S.A. c. F28 (the "FSC Act") and appointing me as Administrator.

20. As the court-appointed Administrator of the Debtor, I have complete control of the management of the Debtor pursuant to section 31(2)(b) of the FSC Act.

21. The High Court specifically authorized me, as an officer of the High Court, "to act in Anguilla or any foreign jurisdiction where [I] believe[] assets and property of the Offshore Banks may be Situate . . . [to] commence [or] continue . . . without further Order of this Honorable Court any proceeding or action . . . in a foreign jurisdiction for the purpose of fulfilling [my] duties and obligations under this Order."

22. The High Court further authorized me "to seek the assistance of any Court of a foreign jurisdiction in the carrying out of the provisions of this Order . . ., including without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of the Offshore Banks and to assist the Administrator in the recovery of the assets and property of the Offshore Banks."

23. At the close of business on April 25, 2016, I determined that the Debtor's business operations should cease immediately. Accordingly, at that time and at my direction, the Debtor ceased accepting new deposits.

24. By an Order dated May 19, 2016 (the "Second Administration Order"), the High Court expressly conferred upon me the powers of a liquidator under the Companies Act, as permitted by section 31(3) of the FSC Act.

25. In order to preserve the Debtor's assets and maximize the amounts available to pay its creditors, I have determined to commence proceedings under the Title 11 of the United States Code (the "Bankruptcy Code").

### C. The Debtor's Chapter 15 Case

26. On May 26, 2016, the foreign representative filed, *inter alia*, a *Verified Chapter 15 Petition for Recognition of a Foreign Proceeding* in the United States Bankruptcy Court for the Southern District of New York for recognition of the Anguillian proceeding as a "foreign main proceeding," thereby commencing Chapter 15 Case #16-11529(MG).

27. By an *Order Granting Verified Petition for Recognition of Foreign Proceeding under Chapter 15 and Motion in Support of Verified Petition and for Related Relief* (the "Recognition Order"), the Bankruptcy Court recognized (a) the Anguillian proceeding as a "foreign main proceeding" and (b) me as the Debtor's foreign representative. *See* Recognition Order, Case #16-11529(MG), ECF No. 17 at ¶¶ 3-4, p. 3.

28. The Recognition Order further provides, *inter alia*, that the Administrator is entitled to conduct discovery, examine witnesses, seek and take evidence, and obtain information concerning the Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

29. Based on the Recognition Order, I am authorized to file a Chapter 11 petition on behalf of the Debtor. *See* 11 U.S.C. § 1528.

### III. THE PETITION AND MOTIONS

30. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

31. Contemporaneously with the filing of the petition, the Debtor is filing the following motions and applications:

  (a) Motion for an Order Extending Time to File Schedules of Assets and Liabilities and Statement of Financial Affairs;

  (b) Motion for Protective Order Regarding the Confidential Information of the Debtor's Depositors Pursuant to Sections 105 and 107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 1007(j) and 9037;

  (c) Motion for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals;

  (d) Motion Pursuant to Federal Rule of Bankruptcy Procedure Authorizing Rule 2004 Examination of the National Bank of Anguilla Ltd.;

  (e) Motion Pursuant to Federal Rule of Bankruptcy Procedure Authorizing Rule 2004 Examination of the National Commercial Bank of Anguilla Ltd.;

  (f) Motion Pursuant to Federal Rule of Bankruptcy Procedure Authorizing Rule 2004 Examination of the Eastern Caribbean Central Bank; and

  (g) Motion Pursuant to Federal Rule of Bankruptcy Procedure Authorizing Rule 2004 Examination of Bank of America.

### III. ADDITIONAL DISCLOSURES REQUIRED BY LOCAL RULE 1007-2

32. Pursuant to Local Rule 1007-2 (a)(1), a statement regarding the nature of the Debtor's businesses and the circumstances leading to the filing of their chapter 11 petitions is set forth above.

33. These cases were not originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code; accordingly, Local Rule 1007-2(a)(2) is inapplicable.

34. No committee was organized prior to the filing of these chapter 11 cases; accordingly, Local Rule 1007-2(a)(3) is inapplicable.

35. Local Rule 1007-2(a)(4) provides that a declaration shall disclose list the holders of the Debtor's unsecured claims on consolidated basis, excluding the claims of insiders. The information set forth in Local Rule 1007-2(a)(4) is part of the information that the Debtor requests authority to file under seal. Accordingly, the Debtor has not attached a schedule setting forth such information.

36. In accordance with Local Rule 1007-2(a)(5), the Debtor has no known secured creditors.

37. As required by Local Rule 1007-2(a)(6), based on the account of prior management, the book value of the Debtor's assets and liabilities (ignoring litigation assets or liabilities) as of the Petition Date, are approximately as follows:

Total Assets: $35 million[2]

Total Liabilities: $37.0 million

38. Pursuant to Local Rule 1007-2(a)(7), the Debtor represents that it has no publicly-traded stock. All of the Debtor's equity is held by NBA.

39. In response to Local Rule 1007-2(a)(8), the Debtor discloses that the "Funds" are in the possession, custody or control of NBA or NCBA. The Debtor believes that such Funds belong to, and are held in trust for, the Debtor. The Administrator has commenced legal proceedings in the High Court Anguilla against NCBA for the return of this money and sought leave of the court in Anguilla to commence an identical proceeding against NBA.

40. In accordance with Local Rule 1007-2(a)(9), the Debtor leases the following property: Conrad W Fleming Corporate Building on St. Mary's Road in The Valley, Anguilla. The Debtor does not own any real property. The office of the Administrator is located at FTI Consulting, Ritter House, P.O. Box 3486, Wickhams Cay II, Tortola, British Virgin Islands.

41. In accordance with Local Rule 1007-2(a)(10), the Debtor discloses the location of the Debtor's substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States, as follows:

    (a) *Location of Substantial Assets*: Unearned portion of retainer (New York); Claims against NBA, NCBA, and ECCB relating to up to $174,959,675.75

---

[2] The total asset value listed above is as reported by prior management to the Administrator. $20 million was represented to be on deposit with NBA. The Debtor and the Administrator make no representation regarding the market value of the Debtor's assets.

- 8 -

       of funds deposited with Bank of America in an account in the name of NBA (New York); Other assets (primarily in Anguilla);

   (b) *Location of Books and Records*:  Most of the Debtor's books and records are maintained at the Administrator's offices.  Certain electronic data is stored with a third party provider; and

   (c) *Nature, Location, and Value of Any Assets Outside of U.S.:*  All assets other than unearned portion retainer paid to Reed Smith, certain litigation claims, and funds believed to be on deposit with Bank of America in an account in the name of NBA, are located outside of the United States.

   42. In response to Local Rule 1007-2(a)(11), to the best of my knowledge, information, and belief, there are no actions or proceedings, pending or threatened against the Debtor or its property where a judgment or a seizure of property is imminent.

   43. In response to Local Rule 1007-2(a)(12), as Administrator, I am the authorized management of the Debtor.  As indicated above, the High Court appointed me as the Administrator on February 22, 2016.  I am a Chartered Accountant and a Consultant with FTI Consulting (BVI) Limited based in Tortola, British Virgin Islands in its Caribbean Corporate Restructuring and Finance Department.  I have over 35 years of experience in restructuring and insolvency, including approximately 12 years in the Caribbean area.  Previously, I was an Insolvency and Restructuring Partner at Ernst & Young LLP in the United Kingdom until September 2004, then Managing Partner of Zolfo Cooper (BVI) Limited from 2004 until 2012 and relocated back to England in July 2012.  I have held appointments as liquidator of many companies in the British Virgin Islands and throughout the Caribbean, including several other cases in Anguilla.  I also have significant experience in cross-border insolvency matters

involving parties in the U.S., U.K., France, Switzerland, Russia, the Commonwealth of Independent States, Hong Kong, People's Republic of China, and Singapore. Until recently, I was a liquidator of two of the largest British Virgin Islands registered feeder funds into Bernard L. Madoff Investment Securities LLC.

   44. As the Debtor is not an operating entity, I understand that the additional disclosures required by Local Rule 1007-2(b) do not apply.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: June 22, 2016

                     /s/ William Tacon_____
                   William Tacon